IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Deree J. Norman,                :
         Petitioner       :
                        :
     v.                    :  No. 690 C.D. 2020
                        :  SUBMITTED: January 22, 2021
Pennsylvania Public Utility    :
Commission,                :
         Respondent    :

BEFORE:   HONORABLE RENÉE COHN JUBELIRER, Judge
                 HONORABLE ANNE E. COVEY, Judge
                 HONORABLE ELLEN CEISLER, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE CEISLER                      FILED: March 16, 2021

Deree J. Norman petitions for review, *pro se*, of the June 18, 2020 Order of the Pennsylvania Public Utility Commission (Commission), which adopted the findings and recommendations of an administrative law judge (ALJ) and denied Mr. Norman's Exceptions to the ALJ's decision. The Commission determined that: (1) Mr. Norman failed to establish that PECO Energy Company (PECO) improperly terminated his electric service for nonpayment; and (2) Mr. Norman proved that he was entitled to a five-year payment arrangement on his delinquent account. We affirm the Commission's Order.

## Background

Mr. Norman initiated this matter six years ago by filing a Formal Complaint with the Commission against PECO on March 16, 2015. At that time, Mr. Norman alleged that PECO had threatened to shut off his electric service for nonpayment and

that there were incorrect charges on his bills. Specifically, Mr. Norman alleged that PECO used fictitious billing algorithms to increase the amount of his electric bills during the winter months.

On April 8, 2015, PECO filed an Answer, denying the material allegations of the Formal Complaint. PECO alleged that it conducted field investigations in 2011 and 2015, which confirmed that the bills for Mr. Norman's service address were accurate and that his electric meter was functioning properly.

Following evidentiary hearings, on July 8, 2016, ALJ Mary Long issued an Initial Decision dismissing Mr. Norman's Formal Complaint. ALJ Long found that Mr. Norman failed to satisfy his burden of proving that his electric bills were incorrect or that PECO's meter technology caused his high electric bills. On August 17, 2016, Mr. Norman filed Exceptions to ALJ Long's Initial Decision, to which PECO replied.

On July 12, 2017, the Commission issued an Opinion and Order denying Mr. Norman's Exceptions, adopting ALJ Long's Initial Decision, and dismissing Mr. Norman's Formal Complaint. Mr. Norman timely appealed to this Court on August 2, 2017. On July 12, 2018, this Court affirmed the Commission's Order. Thereafter, Mr. Norman filed a petition for allowance of appeal with the Pennsylvania Supreme Court, which was denied. *See Norman v. Pa. Pub. Util. Comm'n* (Pa. Cmwlth., No. 1053 C.D. 2017, filed July 12, 2018) (*Norman I*), *appeal denied*, 202 A.3d 680 (Pa. 2019).

Following the issuance of the Commission's July 12, 2017 Order, PECO provided both 10-day written notice and 72-hour telephone notice of termination of service to Mr. Norman. PECO terminated Mr. Norman's electric service for nonpayment on August 21, 2017.

On August 31, 2017, Mr. Norman filed an Informal Complaint with the Commission's Bureau of Consumer Services (BCS) seeking the restoration of his electric service. Certified Record (C.R.) at 14-15. Following an investigation, the BCS found, in pertinent part:

> 4. . . . [O]n 7/19/2017 you contacted PECO regarding the shut-off notice. [PECO] requested a payment of $959.94 to avoid termination of service. You requested a medical certificate. [PECO] mailed a medical certificate to you.[1]
>
> . . . .
>
> 7. According to [PECO] records, per your request, on 8/31/2017 a medical certificate was faxed to Dr. Ron C[.] Analfi at 215-615-3671.
>
> 8. [PECO] has yet to receive a completed medical certificate.
>
> 9. [PECO] reported to our office that your total account balance is $1[,]909.33. This balance does not include any payments or bills sent out on or after 9/6/2017.
>
> 10. [PECO] reported that [it] made one (1) payment arrangement with you in the past, and that you broke the agreement.
>
> 11. [PECO] reported that you have made one (1) payment over the past 36 months.

*Id.* at 13-14. The BCS concluded that because Mr. Norman was no longer a PECO customer, he could not "use a medical certificate to circumvent the payment required for restoration [of service]" and he did not "ma[ke] a good faith effort to pay [his]

---

[1] The Commission's regulations permit a utility company to forestall termination of service or to restore service to a customer if termination would have adverse medical consequences on an occupant of the premises. A customer seeking to avoid termination of service or to restore service for medical reasons must submit a valid medical certification to the utility company. *See* 52 Pa. Code §§ 56.111-56.118.

3

outstanding balance." *Id.* at 15. Therefore, the BCS dismissed Mr. Norman's Informal Complaint.

On August 18, 2017, Mr. Norman filed an Application for Stay of the Commission's July 12, 2017 Order with this Court. On September 12, 2017, this Court dismissed the Application for Stay without prejudice because Mr. Norman did not first seek relief with the Commission pursuant to Pa. R.A.P. 1781(a).[2]

On September 15, 2017, Mr. Norman filed a Petition for Stay with the Commission, asking the Commission to stay enforcement of its July 12, 2017 Order while he pursued his appeal with this Court. On December 7, 2017, the Commission issued an Opinion and Order denying the Petition for Stay. Applying the criteria set forth in *Pennsylvania Public Utility Commission v. Process Gas Consumers Group*, 467 A.2d 805 (Pa. 1983),[3] the Commission found that Mr. Norman failed to establish that he would likely succeed on the merits of his appeal or that he would suffer irreparable harm without the issuance of a stay. The Commission also determined that granting a stay would adversely affect the public interest, stating:

> A public utility is entitled to full payment for service provided to customers and all customers are obligated to pay for the utility service

---

[2] Pa. R.A.P. 1781(a) (emphasis added) provides: "Application for a stay or supersedeas of an order or other determination of any government unit pending review in an appellate court on petition for review or petition for specialized review *shall ordinarily be made in the first instance to the government unit*."

[3] In *Process Gas*, the Pennsylvania Supreme Court held that a stay pending appeal is warranted if: (1) the petitioner makes a strong showing that he is likely to prevail on the merits; (2) the petitioner has shown that without the requested relief, he will suffer irreparable injury; (3) the issuance of a stay will not substantially harm other interested parties in the proceedings; and (4) the issuance of a stay will not adversely affect the public interest. 467 A.2d at 808-09. The Supreme Court further stated: "[I]t is essential that the unsuccessful party, who seeks a stay of a final order pending appellate review, make a *strong showing* under the[se] criteria in order to justify the issuance of a stay." *Id.* at 809 (emphasis added).

4

provided to them.  Otherwise, a customer's unpaid bills are included in the utility's uncollectible expenses and ultimately paid for by other utility customers.  *Mr. Norman had failed to sustain his burden of proof that his bills were too high.  Thus, upon the dismissal of his [Formal] Complaint and the issuance of our final July [12,] 2017 Order, Mr. Norman became obligated to pay for the utility service provided to him.* Granting the Petition [for Stay] would likely cause PECO to include Mr. Norman's unpaid bills within PECO's uncollectible expenses and thereby cause harm to other utility customers in the form of increased costs.

Comm'n Op. & Order, 12/7/17, at 10-11 (internal citations omitted) (emphasis added).  Mr. Norman did not appeal or otherwise challenge this ruling.

On December 15, 2017, Mr. Norman sent an email to PECO's counsel requesting the restoration of his electric service under 52 Pa. Code §§ 56.115 and 56.191.[4]  He attached to this email a December 15, 2017 letter from a certified

_____

[4] The regulation at 52 Pa. Code § 56.115 states:  "When service is required to be restored under this section and [52 Pa. Code] §§ 56.114, 56.116-56.118 and 56.191, the public utility shall make a diligent effort to have service restored on the day of receipt of the medical certification.  In any case, service shall be reconnected within 24 hours. . . ."

The regulation at 52 Pa. Code § 56.191 states, in relevant part:

(b) *Timing*.  When service to a dwelling has been terminated, the public utility shall reconnect service as follows:

    (1) Customers.

        (i) Within 24 hours . . . upon receipt by the public utility of a valid medical certification. . . .

        . . . .

    (2) Applicants.  When the applicant has met all applicable conditions:

        (i) Within 24 hours . . . upon receipt by the public utility of a valid medical certification. The public utility is not required to modify or

**(Footnote continued on next page…)**

registered nurse practitioner, who stated that Mr. Norman has severe sleep apnea and needs electricity to operate his CPAP machine. C.R. at 111-12. By letter dated December 18, 2017, PECO's counsel informed Mr. Norman that because PECO had terminated his service for nonpayment in August 2017, he was no longer a PECO customer. *Id.* at 117. PECO's counsel directed Mr. Norman to contact PECO's customer service department to apply for new service. *Id.*

On December 27, 2017, while *Norman I* was still pending in this Court, Mr. Norman filed a second Formal Complaint with the Commission against PECO. In that Formal Complaint, Mr. Norman alleged that: (1) PECO improperly terminated his electric service on August 21, 2017; (2) PECO did not offer him a payment arrangement before or after terminating his service; and (3) there were incorrect charges on his final bill.

On January 18, 2018, PECO filed an Answer, denying the material allegations of the Formal Complaint. PECO alleged that it terminated Mr. Norman's service for his failure to pay a past due balance of $1,760.68, after providing Mr. Norman with the legally required pre-termination notices. PECO further alleged that it terminated Mr. Norman's service via an underground dig because Mr. Norman denied PECO access to his electric meter. Finally, PECO alleged that because Mr. Norman was no longer a PECO customer following the lawful termination of his service, he was not entitled to a payment arrangement.

On February 1, 2018, Mr. Norman filed a Petition for Restoration of Service with the Commission. In his Petition, Mr. Norman averred that his electric service

---

eliminate the payment required to restore service if a medical certificate is presented. . . .

52 Pa. Code § 56.191(b)(1)(i) and (2)(i).

should be restored because he "has fully complied with the requirements [of] 52 Pa. Code § 56.115." *Id.* at 49. Mr. Norman attached the December 15, 2017 letter from the nurse practitioner regarding his sleep apnea. On March 5, 2018, Mr. Norman filed with the Commission a Motion to Compel and Sanction PECO for failing to restore his electric service.

ALJ Marta Guhl held an evidentiary hearing on June 22, 2018. On October 19, 2018, ALJ Guhl issued an Initial Decision granting in part and denying in part Mr. Norman's Formal Complaint. ALJ Guhl concluded that Mr. Norman failed to prove that PECO improperly terminated his service, that there were incorrect charges on his final bill, or that PECO violated any applicable statute or regulation with regard to his request for a medical certification. ALJ Guhl concluded, however, that Mr. Norman proved that he was entitled to a five-year payment arrangement under Section 1405(b)(1) of the Public Utility Code (Code), 66 Pa. C.S. § 1405(b)(1).[5] Thus, ALJ Guhl directed PECO to re-calculate Mr. Norman's bills to reflect his current charges plus an amount equal to one-sixtieth of his unpaid balance. ALJ Guhl further directed that if Mr. Norman adheres to the payment arrangement, PECO shall not suspend or terminate his service (except for valid safety or emergency reasons) or assess late payments or finance charges on his account.

---

[5] Section 1405(a) of the Code authorizes the Commission to establish payment arrangements between a customer and a public utility. 66 Pa. C.S. § 1405(a). Section 1405(b)(1) of the Code provides:

> The length of time for a customer to resolve an unpaid balance on an account that is subject to a payment arrangement that is investigated by the [C]ommission and is entered into by a public utility and a customer shall not extend beyond:

> (1) Five years for customers with a gross monthly household income level not exceeding 150% of the [f]ederal poverty level.

66 Pa. C.S. § 1405(b)(1).

On November 8, 2018, Mr. Norman filed Exceptions to ALJ Guhl's Initial Decision. Mr. Norman's 32 enumerated exceptions fell into three categories: (1) hearsay objections to PECO's evidence that it sent a medical certification form to Mr. Norman's physician; (2) PECO's termination of his electric service; and (3) the accuracy of PECO's billing with regard to his past due balance. *See* Comm'n Op. & Order, 6/18/20, at 21-22 & n.13.

PECO filed a Reply to the Exceptions, averring that "[Mr. Norman's E]xceptions demonstrate that he wants to re-litigate his billing dispute with PECO and continue to use the [Commission's] administrative process to harass PECO and avoid paying his PECO bill. [Mr. Norman] has not paid for electricity since October 2014." C.R. at 313.[6]

On June 18, 2020, the Commission issued an Opinion and Order denying Mr. Norman's Exceptions and affirming ALJ Guhl's Initial Decision. The Commission ordered, in pertinent part:

> 1. That the Exceptions of [Mr.] Norman filed on November 8, 2018, to the Initial Decision of [ALJ] Guhl issued October 19, 2018, . . . are denied[] . . . .
>
> . . . .
>
> 3. That the [Formal] Complaint of [Mr.] Norman filed against PECO . . . on December 27, 2017, regarding the request for a payment arrangement is granted[] . . . .
>
> 4. That PECO . . . shall calculate the bills for [Mr.] Norman[] . . . in order for [Mr. Norman] to pay his current charges[,] plus an amount equal to one sixtieth . . . of the balance accrued on the account[] . . . .

---

[6] PECO also noted that Mr. Norman filed a similar complaint with the Commission against Philadelphia Gas Works, his gas utility provider, alleging "billing discrepancies," which was still being litigated. C.R. at 313.

5.  That as long as [Mr.] Norman[] . . . keeps the payment schedule stated in this Opinion and Order, PECO . . . shall not suspend or terminate his utility service[,] except for valid safety or emergency reasons[,] or assess late payments or finance charges against his account.

Comm'n Op. & Order, 6/18/20, at 29-30.[7]  Mr. Norman now petitions this Court for review.[8]

## Analysis

Preliminarily, we note that it is difficult to discern the precise issues Mr. Norman wishes to raise on appeal, because he identifies different issues in his Petition for Review than in the Statement of Questions Involved and Summary of Argument sections of his appellate brief.[9]  While we could find waiver on this basis,

---

[7] In their appellate briefs, both Mr. Norman and PECO state that PECO restored Mr. Norman's electric service on September 10, 2020.  *See* Norman Reply Br. at 10; PECO Br. at 17.

[8] Our scope of review is limited to determining whether constitutional rights were violated, whether an error of law was committed, or whether the necessary findings of fact are supported by substantial evidence.  Section 704 of the Administrative Agency Law, 2 Pa. C.S. § 704.

[9] For example, in the Summary of Argument section of his brief, Mr. Norman does not address the issues raised in either his Petition for Review or his Statement of Questions Involved, but instead attempts to re-litigate the factual matters before ALJ Long and the Commission in *Norman I*.  Mr. Norman asserts:

> In the absence of inuendo, unsubstantiated rhetoric, and the clear misrepresentation of fact exercised by PECO, condoned and validated by ALJ[]s and adopted by the [Commission], the [f]acts presented herein will sustain that [Mr. Norman's] Complaint which originally intended to call [into] question . . . the unlawful systematic increases in usage proffered by PECO which unjustifiably increased the company's revenue.  The collaborative agenda of PECO, ALJ[]s and the [Commission] to ensure that the complaint would not expose PECO's transgression soon became a referendum on bias, coverup and the deviation from the P[ennsylvania] [r]ules of [l]aw and established [l]egal [s]tandards.

**(Footnote continued on next page…)**

9

we decline to do so because, upon review of Mr. Norman's *pro se* filings and the certified record, we are able to glean the following preserved issues for appeal: (1) whether PECO properly terminated Mr. Norman's electric service on August 21, 2017; (2) whether PECO was required to offer him a payment arrangement to resolve his unpaid balance; and (3) whether PECO complied with Mr. Norman's requests for a medical certification. *See* Pa. R.A.P. 1513(d)(5) (providing that, in an appellate petition for review, "the omission of an issue from the statement [of objections] shall not be the basis for a finding of waiver if the court is able to address the issue based on the certified record").

### 1. Termination of Service

First, Mr. Norman asserts that "the Commission erroneously concluded that there is nothing to indicate that PECO did not follow proper notice procedures" before terminating his electric service on August 21, 2017. Pet. for Rev. at 1; *see* Norman Br. at 15 n.2. We disagree.

Section 1406(a)(1) of the Code permits a public utility to terminate service for a customer's "[n]onpayment of an undisputed delinquent account." 66 Pa. C.S. §

---

The facts will further sustain that PECO engaged in unlawful strongarm tactics to install more advanced Smart Meters in the homes of PECO customers, outside of the purview of the P[ennsylvania] [r]ules by misrepresentations and the concealment of a customer's legal requirement in an effort to further its ulterior motive to gain unfettered control of electric usage of its customer to the extent that said customers could not[] easily notice and or prove when usage amount are unlawfully manipulated (ramped up) to increase company revenue.

Finally, the facts will further sustain that the presiding ALJ[]s on more than one occasion ignored, misapprehended and or intentionally deviated from the P[ennsylvania] [r]ules of [l]aw and established [l]egal [s]tandards.

Norman Br. at 19. This Summary of Argument plainly violates our appellate rules. *See* Pa. R.A.P. 2118 ("The summary of argument shall be *a concise, but accurate, summary of the arguments presented in support of the issues in the statement of questions involved*.") (emphasis added).

10

1406(a)(1). However, a public utility may do so only after giving the customer proper notice. *See* 66 Pa. C.S. § 1406(b)(1). Section 1406(b)(1) of the Code requires a public utility to give a customer the following pre-termination notices:

> Prior to terminating service under [Section 1406(a) of the Code], a public utility:
>
> (i) Shall provide *written notice* of the termination to the customer *at least ten days prior to the date of the proposed termination*. The termination notice shall remain effective for 60 days.
>
> (ii) Shall attempt to contact the customer or occupant to provide notice of the proposed termination *at least three days prior to the scheduled termination*, using one or more of the following methods:
>
>> (A) in person;
>>
>> (B) by telephone. *Phone contact shall be deemed complete upon attempted calls on two separate days to the residence between the hours of 8 a.m. and 9 p.m. if the calls were made at various times each day*; or
>>
>> (C) by e-mail, text message or other electronic messaging format consistent with the [C]ommission's privacy guidelines and approved by [C]ommission order.
>>
>> (D) In the case of electronic notification only, the customer must affirmatively consent to be contacted using a specific electronic messaging format for purpose of termination.

66 Pa. C.S. § 1406(b)(1) (emphasis added); *see* 52 Pa. Code §§ 56.321(1), 56.331.

Here, PECO's witness, Dana McCollum, testified that on July 13, 2017, the day after the Commission's July 12, 2017 Order, PECO issued a written termination notice to Mr. Norman for nonpayment of his past due balance of $1,760.68. Notes of Testimony (N.T.), 6/22/18, at 50, 52. On July 19, 2017, Mr. Norman contacted

11

PECO regarding the termination notice, and a PECO representative informed Mr. Norman that he would need to make a minimum payment of $959.94 (50% of his unpaid balance), in order to avoid termination.  Comm'n Op. & Order, 6/18/20, at 3.

Because Mr. Norman did not make any payment, PECO proceeded with its 72-hour termination notice.  *Id.*  PECO called Mr. Norman four times between August 7, 2017 and August 15, 2017, and a PECO representative spoke directly with Mr. Norman on August 15, 2017.  N.T., 6/22/18, at 56-57; *see* C.R. at 28.  Ms. McCollum testified regarding the August 15, 2017 telephone call as follows:

> [The PECO representative] offer[ed] [Mr. Norman] the minimum payment option again.  This time it's offered for 60[%] of the account balance, which would have been $1,188.58[,] that he could post to retain his service.  But at this point the service is not guaranteed, because . . . the notice process has been satisfied.  So the service can be terminated at this point at any day.
>
> [Mr. Norman] was advised that . . . the [Commission's] formal case[] . . . was closed.  That there had been no payment since 2014.  And [Mr. Norman] explained that he was going to court for the matter.  And again he was advised that the case was closed, service was not guaranteed. . . .

N.T., 6/22/18, at 58.  The Commission credited Ms. McCollum's testimony, *see* Comm'n Op. & Order, 6/18/20, at 11, and we will not disturb that credibility determination on appeal. *See Kviatkovsky v. Pa. Pub. Util. Comm'n*, 618 A.2d 1209, 1211 (Pa. Cmwlth. 1992) (stating that the Commission, as the ultimate factfinder, determines the weight and credibility of the evidence presented, and its findings are conclusive on appeal as long as they are supported by substantial evidence).

Further, Mr. Norman admitted, both at the hearing and in an August 15, 2017 email to PECO's counsel, that he received the requisite 10-day written notice and 72-hour telephone notice before his service was terminated.  N.T., 6/22/18, at 8, 59-

12

60 & PECO Ex. 7. Therefore, we conclude that PECO properly terminated Mr. Norman's service for nonpayment on August 21, 2017.

Next, Mr. Norman asserts that because he appealed the Commission's July 12, 2017 Order to this Court, PECO was prohibited from terminating his service until the resolution of that appeal. Norman Br. at 26-31. Essentially, Mr. Norman claims that because he was still challenging the accuracy of his unpaid bills in *Norman I*, his account was not "undisputed" as required for termination of service under Section 1406(a)(1) of the Code. We disagree.

There is no provision in either the Code or the Commission's regulations that prohibits a public utility from terminating service for nonpayment while an appeal of a Commission order is pending. Rather, the Commission's regulations specifically state that "a public utility may terminate service after giving proper notice in accordance with [the Commission's regulations], *whether or not a dispute is pending*." 52 Pa. Code § 56.164 (emphasis added).[10]

Furthermore, Section 316 of the Code provides that any Commission finding, determination, or order "shall be prima facie evidence of the facts found *and shall remain conclusive* upon all parties affected thereby*, unless set aside, annulled or modified on judicial review*." 66 Pa. C.S. § 316 (emphasis added). In other words, the disputed charges at issue in *Norman I* became "conclusive" upon the Commission's issuance of its July 12, 2017 Order, even while Mr. Norman's appeal was pending, and remained conclusive unless and until this Court reversed or modified that decision on appeal.

---

[10] Although Mr. Norman continued to dispute the accuracy of his bills in *Norman I*, he did not dispute that his account with PECO was unpaid and, thus, delinquent. *See* 66 Pa. C.S. § 1406(a)(1) (authorizing termination of service for "[n]onpayment of an *undisputed delinquent account*") (emphasis added).

It is true, as Mr. Norman points out, that he requested a stay of the Commission's Order with both this Court and the Commission, seeking to forestall the termination of his electric service for nonpayment. As discussed in the Background section of this Opinion, *supra*, this Court dismissed Mr. Norman's Application for Stay, without prejudice, because he did not first seek relief with the Commission under Pa. R.A.P. 1781(a). Thereafter, Mr. Norman immediately filed a Petition for Stay with the Commission, which was denied. Based on its review of the record and the Petition for Stay, the Commission concluded that Mr. Norman failed to satisfy the legal requirements for a stay pending appeal. Comm'n Op. & Order, 12/7/17, at 10-11. Mr. Norman did not subsequently challenge that decision or file a new request for a stay with this Court. Therefore, we agree with the Commission that, absent the issuance of a stay, PECO was not precluded from terminating Mr. Norman's service for nonpayment following the Commission's July 12, 2017 Order.[11]

## 2. Payment Arrangement

Next, Mr. Norman asserts that "PECO failed to offer and[/]or respond to [his] [r]equest for [a] payment arrangement" before or after terminating his electric service. Pet. for Rev. at 1; *see* Norman Br. at 15, 24-26; Norman Reply Br. at 9.

The Commission's regulations outline the procedures a public utility must follow if a customer contacts the utility after receiving an initial notice of termination. The regulation at 52 Pa. Code § 56.97 provides, in pertinent part:

---

[11] In her Initial Decision, ALJ Guhl incorrectly stated that "there is nothing in the record to indicate that [Mr. Norman] requested a stay from the Commonwealth Court regarding any potential actions by [PECO]." ALJ Guhl Initial Decision at 8. Despite this error, however, ALJ Guhl properly concluded that PECO was not precluded from terminating Mr. Norman's service on August 21, 2017, because neither the Commission nor this Court had *granted* a stay of the Commission's July 12, 2017 Order. *See id.* at 8-9.

(a) If, *after the issuance of the initial termination notice and prior to the actual termination of service*, a customer or occupant contacts the public utility concerning a proposed termination, *a public utility shall fully explain*:

> (1) The reasons for the proposed termination.
>
> (2) *All available methods for avoiding a termination*, including the following:
>
>> (i) Tendering payment in full or otherwise eliminating the grounds for termination.
>>
>> (ii) *Entering a payment arrangement*.
>>
>> (iii) Paying what is past-due on the most recent previous company negotiated or Commission payment arrangement.
>
> (3) Information about the public utility's universal service programs, including the customer assistance program. Refer the customer or applicant to the universal service program of the public utility to determine eligibility for a program and to apply for enrollment in a program.
>
> (4) The medical emergency procedures.

(b) *The public utility shall exercise good faith and fair judgment in attempting to enter a reasonable payment arrangement* or otherwise equitably resolve the matter. *Factors to be taken into account when attempting to enter into a reasonable payment arrangement include the size of the unpaid balance, the ability of the customer to pay, the payment history of the customer and the length of time over which the bill accumulated. . . .*

52 Pa. Code § 56.97(a) and (b) (emphasis added).

Here, Mr. Norman contends that PECO failed to offer him a payment arrangement before terminating his service in violation of the Commission's regulations.[12]  However, the record establishes that, prior to terminating his electric service, PECO offered Mr. Norman several payment options.  Ms. McCollum credibly testified that in July 2017, PECO offered him a minimum payment option in order to avoid termination.  N.T., 6/22/18, at 58.  Rather than making the requested minimum payment, Mr. Norman opted to pursue litigation.  *Id.* at 58-59 & PECO Ex. 7.  PECO again offered Mr. Norman a minimum payment option in a telephone call on August 17, 2017, but Mr. Norman "declined" and stated that he was pursuing "business in the court."   N.T., 6/22/18, at 61.

Moreover, the record shows that at the time PECO offered these payment options to Mr. Norman, he had an unpaid balance of almost $2,000; had a prior payment arrangement with PECO that he did not fulfill; and had not made a payment to PECO in almost three years.  C.R. at 13-14.  Therefore, we conclude that the payment options PECO offered to Mr. Norman before terminating his service were reasonable under the circumstances.  *See* 52 Pa. Code § 56.97(b).

Furthermore, the record shows that shortly after terminating his service, PECO again offered Mr. Norman two payment options to restore his service, as follows:

14) [PECO] has offered two options for restoration [of service]:

A) Pay $1[,]886.90 toward the total account balance, plus a $1[,]650.00 reconnection fee.

OR

---

[12] Mr. Norman does not argue that PECO failed to comply with the other requirements of 52 Pa. Code § 56.97(a).

16

B) If your income is below 150% of the [f]ederal poverty level, your account balance will be entered into a payment arrangement. The company will accept $1[,]728.62 to restore service. This amount represents the $1[,]650.00 reconnection fee and $78.62 towards the account balance. You must verify your income to be below 150% of the [f]ederal poverty level if you would like to accept this option. You must contact the company to provide income verification.

C.R. at 14. Mr. Norman neither made a payment nor provided the requested income verification to PECO. N.T., 6/22/18, at 73-75.[13] Therefore, Mr. Norman's claim that he "was never offered any [payment] option other than paying the entire amount of the previous unpaid balance which was being disputed," Norman Reply Br. at 8, is belied by the record.[14]

In any event, after Mr. Norman filed his Formal Complaint with the Commission requesting a payment arrangement, the Commission *granted* him a payment arrangement.[15] ALJ Guhl specifically rejected PECO's contention that Mr. Norman was not entitled to a payment arrangement because he was no longer a PECO customer after the termination of his service. Rather, ALJ Guhl found, based

---

[13] PECO's records show that a $70 payment was posted to Mr. Norman's account on September 6, 2017, but Mr. Norman disputed making that payment. *See* N.T., 6/22/18, at 52 & PECO Ex. 1; C.R. at 7; *see also* N.T., 6/22/18, at 125 (Mr. Norman stated on the record, "I have never made a payment for quite some time, because I have been disputing all of these charges. So where they got this $70 [payment] from is beyond me.").

[14] In his Formal Complaint, Mr. Norman likewise averred: "PECO has never offered any expl[a]nation for any of [my] concerns. PECO has informed [me] to pay all past due charges." C.R. at 5.

[15] When a formal payment dispute arises between a customer and a public utility, Section 1405(a) of the Code authorizes the Commission to (1) "investigate complaints regarding payment disputes between a public utility, applicants and customers"; and (2) "establish payment arrangements between a public utility, customers and applicants within the limits established by this chapter." 66 Pa. C.S. § 1405(a).

17

on the evidence of record, that Mr. Norman *was* still a customer, because he filed an Informal Complaint seeking restoration of his service within 30 days of the termination. ALJ Guhl Initial Decision at 13, 15; *see* 66 Pa. C.S. § 1403 (defining "customer" as including "a person who, within 30 days after service termination . . . seeks to have service reconnected at the same location or transferred to another location within the service territory of the public utility"). Thus, ALJ Guhl determined that the Commission was authorized to establish a payment arrangement for Mr. Norman to resolve his unpaid balance. ALJ Guhl Initial Decision at 14, 16.

ALJ Guhl further found that Mr. Norman's household income of $1,500 per month for a two-person household placed him at 109% of the federal poverty level. *Id.* at 13. Based on this income level, ALJ Guhl determined that Mr. Norman was entitled to a five-year payment arrangement. *Id.*; *see* 66 Pa. C.S. § 1405(b)(1) (stating that "[t]he length of time for a customer to resolve an unpaid balance on an account . . . subject to a payment arrangement shall not extend beyond[] . . . [f]ive years for customers with a gross monthly household income level not exceeding 150% of the [f]ederal poverty level"). Therefore, ALJ Guhl established a payment arrangement for Mr. Norman of one-sixtieth of his past due balance per month (approximately $32.81 per month) for a period of five years, ALJ Guhl Initial Decision at 16-17, and the Commission adopted ALJ Guhl's findings and conclusions on this issue, Comm'n Op. & Order, 6/18/20, at 19, 21-22, 29-30. Notably, Mr. Norman does not challenge this portion of the Commission's decision, asserting that "the Commission correctly concluded that [he] met his burden [of proving] that he is eligible for a payment arrangement." Pet. for Rev. at 1.

18

### 3. Medical Certification

Finally, Mr. Norman asserts several disjointed arguments regarding ALJ Guhl's evidentiary rulings relating to Mr. Norman's request for a medical certification, baldly claiming that ALJ Guhl was biased against him and based her rulings on false statements by PECO. *See* Norman Br. at 10-11, 32. Mr. Norman presented similar claims in his Exceptions filed with the Commission, which the Commission found to be unsubstantiated and without merit. After reviewing ALJ Guhl's evidentiary rulings and the conduct of the proceedings, the Commission concluded:

> [Mr. Norman] alleges[] . . . the improper receipt of documentary evidence by [ALJ Guhl] based on hearsay grounds. [Mr. Norman] asserts that the allowance of documents or testimony sponsored by PECO were misrepresentations, falsifications or unacceptable, and [based on] the ALJ's acceptance of conjecture. The Exceptions further repeat arguments alleging bias on the part of [ALJ Guhl]. In addition, [Mr. Norman] expressly objects to the sufficiency of the evidence regarding the receipt (or lack of receipt) of a medical certification from PECO. . . .
>
> On consideration of the allegations of bias on the part of [ALJ Guhl] . . . , we shall deny the Exceptions of Mr. Norman. A review of the record in this matter fails to disclose any basis for such allegations against the presiding ALJ . . . .

Comm'n Op. & Order, 6/18/20, at 20-21; *see id.* at 23 (concluding that "the presiding ALJ exercised the appropriate discretion in all rulings concerning the receipt of evidence in this proceeding"). We find no error in this decision.

Although the Commission was unable to determine whether PECO sent a medical certification form to Mr. Norman or his physician when he requested one, it ultimately concluded that the evidence regarding a medical certification was "ancillary" to Mr. Norman's dispute. *Id.* at 26. We agree.

19

The crux of Mr. Norman's Formal Complaint was PECO's failure to offer him a payment arrangement before terminating his service or to establish a payment arrangement after the termination so that he may resume service. *See* C.R. at 2 (in his Formal Complaint, Mr. Norman averred, "I would like a payment agreement" and "I was never given an opportunity to establish a fair and feasible payment arrangement"). The Formal Complaint makes no mention of a request for a medical certification. *See id.* In addition, the only issue Mr. Norman raises in his Petition for Review is PECO's failure to offer or establish a payment arrangement. *See* Pet. for Rev. at 1.

In its decision, the Commission stated: "[W]hile Section 1407 of the Code, 66 Pa. C.S. § 1407, sets out the terms that a [public] utility may impose on a customer requesting reconnection of service, *it does not divest the Commission of its authority to order a payment arrangement pursuant to [Section 1405 of the Code,] 66 Pa. C.S. § 1405[,] for a customer who was lawfully disconnected for nonpayment*." Comm'n Op. & Order, 6/18/20, at 26 (emphasis added). The Commission then concluded, based on the evidence of record, that Mr. Norman was still a customer of PECO and, as a customer, he was entitled to a five-year payment arrangement to resolve his unpaid balance. *Id.* at 29. The Commission further ordered that if Mr. Norman complies with the payment arrangement established, PECO "shall not" terminate or suspend his electric service except for valid safety or emergency reasons. *Id.* at 29-30. In other words, Mr. Norman obtained the precise relief he sought by initiating these proceedings – a payment arrangement to resolve his significant unpaid balance and the restoration of his electric service. *See supra* note 7.

## Conclusion

Accordingly, we affirm the Commission's Order.[16]

_____
ELLEN CEISLER, Judge

---

[16] Mr. Norman devotes a significant portion of his appellate brief to arguing that this Court should "reopen" his prior case before ALJ Long (involving the accuracy of his electric bills and PECO's "smart meter" technology), asserting claims of ALJ Long's bias, prejudice, and abuse of judicial procedure. *See, e.g.*, Norman Br. at 11-17, 19, 26-31, 33-35. Aside from the fact that Mr. Norman did not raise these claims in his Exceptions filed with the Commission, to the extent Mr. Norman attempts to re-litigate the factual and evidentiary matters before ALJ Long, they have been fully litigated in the proceedings before the Commission and the appellate courts in *Norman I* and, thus, are not properly before this Court.

Mr. Norman's brief also contains arguments relating to events that allegedly took place after the Commission's June 18, 2020 Order, and he appends several documents relating to these claims that are not included in the certified record. *See, e.g.*, Norman Br. at 18 (asserting that following the Commission's decision, "PECO still refused to reconnect [Mr. Norman's] electric service unless [he] allowed PECO to exchange his first-generation Smart Meter with a more advanced Smart Meter"). However, this Court cannot consider evidence on appeal that was not part of the record before the Commission. *See Pa. Tpk. Comm'n v. Unemployment Comp. Bd. of Rev.*, 991 A.2d 971, 974 (Pa. Cmwlth. 2009); *Pryor v. Workers' Comp. Appeal Bd. (Colin Serv. Sys.)*, 923 A.2d 1197, 1201 (Pa. Cmwlth. 2006). Therefore, we will not consider Mr. Norman's extra-record evidence or arguments.

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Deree J. Norman,                                    :
                        Petitioner                  :
                                                    :
            v.                                      :   No. 690 C.D. 2020
                                                    :
Pennsylvania Public Utility                         :
Commission,                                         :
                        Respondent                  :


# **O R D E R**


AND NOW, this 16th day of March, 2021, we hereby AFFIRM the June 18, 2020 Order of the Pennsylvania Public Utility Commission.


_____
ELLEN CEISLER, Judge